# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

---

### Appeal No.:   14-10228-FF

### District Case No.: 6:13-cr-94-Orl-37GJK

---

### JONATHAN DAVID ADLETA,

**Defendant/Appellant,**

**v.**

### UNITED STATES OF AMERICA,

Appellee.

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

---

### INITIAL BRIEF OF APPELLANT

---

**Christopher L. Smith, Esquire**
**Florida Bar No. 367461**
**605 E. Robinson Street, Suite 250**
**Orlando, Florida 32801**
**Telephone: (407) 897-6888**
**Facsimile: (407) 841-3817**
**E-Mail: chrislegalcounsel@yahoo.com**
**Counsel for Appellant**

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

In compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned hereby certifies that the following listed persons and entities have an interest in the outcome of this case:

1.  Jonathan Adleta, Defendant/Appellant

2.  Sarah Jayne Adleta, Co-Defendant

3.  Matthews R. Bark, Esquire, Trial Counsel for Appellant

4.  The Honorable Roy B. Dalton, Jr., United States District Judge

5.  Karen L. Gable, Assistant U.S. Attorney

6.  Ilianys Rivera Miranda, Esquire, Assistant U.S. Attorney

7.  David Paul Rhodes, Esquire, Assistant U.S. Attorney

8.  Christopher L. Smith, Appellate attorney for Defendant

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, Jonathan Adleta, does not request oral argument. The facts and legal arguments will be adequately presented in the briefs and record, and the decision-making process would not be significantly aided by oral argument. <u>See</u> Fed R. App. P. 34(a)(2).

## CERTIFICATE OF TYPE SIZE AND STYLED

The Appellant certifies that 14 point Times New Roman font is used in this brief.

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION

Appellant certifies that the Initial Brief is within the word limit.

# TABLE OF CONTENTS

**Page(s)**

Certificate of Interested Persons and Corporate Disclosure Statement......... i

Statement Regarding Oral Argument...............................................ii

Certification of Type Size and Style..............................................ii

Certificate of Compliance with Type-Volume Limitation.......................ii

Table of Contents..................................................................iii

Table of Citations..............................................................iv-vi

Statement of Subject Matter and Appellate Jurisdiction.........................1

Statement of the Issues...........................................................2

Statement of the Case and Facts.................................................3

Summary of the Argument......................................................10

Argument........................................................................11

       Issue:      Whether Rules 413 and 414 of the Federal Rules of
                    Evidence violates the Due Process clause on the
                    Fifth Amendment.

Conclusion......................................................................20

Certificate of Service...........................................................21

iii

# TABLE OF CITATIONS

| CASES CITED | PAGE NO. |
|---|---|
| *Boyd v, United States,*<br>142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892) | 15 |
| *Dowling v. United States,*<br>493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) | 11, 19 |
| *Huddleston v. United States,*<br>485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) | 15, 17, 18 |
| *Lisenba v. California,*<br>314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941) | 17 |
| *Michelson v. United States,*<br>335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) | 17 |
| *Montana v. Egelhoff,*<br>518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) | 11 |
| *Old Chief v. United States,*<br>519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) | 16 |
| *Patterson v. New York,*<br>432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) | 12 |
| *Robinson v. California,*<br>370 U.S. 660 (1962) | 13 |
| *United States v. Castillo,*<br>140 F.3d 874 (10th Cir. 1998) | 15, 16, 17 |
| *United States v. LeCompte,*<br>131 F.3d 767 (8th Cir. 1997) | 18 |
| *United Stated v. Lovasco,*<br>431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) | 11, 15 |

*United States v. Moccia,*
681 F.2d 61 (1st Cir. 1982)                                    16

*United States v. Mound,*
149 F.3d 799, (8th Cir. 1998)                                 15, 18, 19

*United States v. Sumner,*
119 F.3d 658 (8th Cir. 1997)                                  18

## STATUTES CITED:

18 U.S.C. § 2423                                               8

18 U.S.C. § 2253                                               8

28 U.S.C. § 1291                                               1

Fed. R. Evid. 404(b)                                          9-10, 13-14,
                                                              16-18, 20

Fed. R. Evid. 413                                             2, 4, 9-10,
                                                              12, 15-16,
                                                              18-19

Fed. R. Evid. 414                                             2, 4, 9-10,
                                                              15-19

## OTHER AUTHORITIES

Brauser, Jason M., Comment, *Intrinsic or Extrinsic?:*        14
*The Confusing Distinction between Inextricably*
*Intertwinged Evidence and Other Crimes Evidence*
*under Rule 404(b),* 88 Nw. U. L. Rev. 1582, 1583-84 (1984)

Broun, Kenneth S. et al., *McCormack on Evidence*             12, 14
§ 190, at 550 n.8 (Edward W. Clearly ed., 3d ed. 1984)

Dix, George E. et al., *McCormick on Evidence* 4 §§ 186-95,    12
(Kenneth S. Broun ed., 2006)

*Hampden's Trial,* 9 How. St. Tr. 1053, 1103 (K.D. 1684)    15

Imwinkelried, Edward J., *Uncharged Misconduct*    12, 13
*Evidence* § 2:19, at 2-113, rev. ed. 2003 & Supp. 2009

Reed, 21 AM. J.CRIM. L. at 171    16

Teter, Michael, *Acts of Emotion: Analyzing Congressional*    12
*Involvement in the Federal Rules of Evidence,*
58 Cath. U. L. Rev. 153, 177-87 (2008)

Saltsburg, Stephen A., *Trial and Tactics: Inextricably*    14
*Intertwined? Maybe Not*, 16 Crim. Just. 60, 60 (2001)

Weinstein, Jack B. & Berger, Margaret A.,    14
*Weinstein's Evidence* ¶ 404[08], at 404-47

Wright, Charles Alan Wright & Graham, Kenneth W. Jr.,    14
*Federal Practice and Procedure* § 5239, at 427 (1978)

# STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This is a direct appeal from a Judgment and Sentence, after jury trial, from the District Court.  This Court has jurisdiction pursuant to Title 28 U.S.C. § 1291.  The Appellant was found guilty of the charges in the Indictment after a jury trial.  (Doc. 89).  The Trial Court sentenced the Appellant on January 6, 2014.  (Doc. 102) and Judgment was entered on January 10, 2014.  (Doc. 103).  The Appellant timely filed his Notice of Appeal.  (Doc. 104).

## <u>STATEMENT OF THE ISSUE</u>

Whether Rules 413 and 414 of the Federal Rules of Evidence violate the Due

Process clause on the Fifth Amendment.

## <u>STATEMENT OF THE CASE AND FACTS</u>

(For purposes of references to the record, all references of "T" represent the evidence presented on Day 2 of the Trial, Doc 74. Any other transcript reference will identify the Docket number).

The Government presented the following direct evidence of Appellant's guilt on the charges in the Superseding Indictment.

Sarah Adleta testified that the biological father of her children was her former husband, Jonathan Adleta. (T. 78). Sarah Adleta stated that she and Jonathan Adleta began dating in 2007. Jonathan Adleta and Sarah Adleta were married in 2010 and divorced in 2011. (T. 87).

Sarah Adleta testified that on December 23, 2012, she and their children traveled from Orlando, Florida to Jonathan Adleta's home in Oklahoma. She and the children returned home to Orlando, Florida on January 3, 2012. (T. 100-111). Jonathan Adleta had made the travel arrangements for her and their children and had paid for the plane tickets. (T. 182-183). According to Sarah Adleta, prior to the trip, she and Jonathan Adleta had discussed Jonathan Adleta's plans to engage in sex acts with their daughter, K. (T. 105-108).

Moreover, Sarah Adleta stated that on December 26, 2012, while at Jonathan Adleta's residence in Oklahoma, Jonathan Adleta called her into the bedroom and she observed as Jonathan Adleta masturbated while standing next to the bed where

3

their daughter, K, was lying naked.  Sarah Adleta also observed Jonathan Adleta ejaculate onto K's chest and K became visibly upset.  Jonathan Adleta also told Sarah Adleta that shortly after they had arrived at his residence in Oklahoma, he had put his penis in his daughter K's mouth, when they were showering together.  (T. 111-114).

The Government presented evidence from record custodians of USAA Financial Institution and American Airlines confirming that Jonathan Adleta paid for the airplane tickets to fly Sarah Adleta, L and K to Oklahoma. (T. 208-218).

The Government also called Samantha Bryant, who testified that she was present in Oklahoma on Christmas day and confirmed the sexual acts performed on K by the Appellant, described by Sarah Adleta in her testimony.  (T. 197-199).

The Government also introduced evidence of collateral bad acts, pursuant to the Court's ruling on the admissibility of Rule 413 and 414 Evidence.

During 2011, Jonathan Adleta was in the United States Marine Corp. and deployed to Afghanistan.  According to Sarah Adleta, during his time overseas, Jonathan Adleta asked her to join a website to pay for videos of child pornography and sent the videos to him.  (T. 88-98).

Sarah Adleta testified that in the Fall of 2011, Jonathan Adleta had told her that upon his return from overseas deployment, he would like to engage in sexual activity with his 2 year old daughter (K).  (T. 98). Jonathan Adleta had expressed to Sarah Adleta that he wanted to watch her have sexual intercourse with their one year

old son (L), when he got a little older.  (T. 81).  Jonathan Adleta stated that he had fantasies about father-daughter sex and wanted to carry out this fantasy with his daughter.  (T. 77-81).

Furthermore, Sarah Adleta had told Jonathan Adleta about the sex acts that she had performed with the son, L, and daughter, K.  She also produced images of child pornography from those incidents which she sent to her former boyfriend, Dixon. Sarah Adleta explained that she had performed oral sex on both her daughter, K, and her son, L, and had digitally penetrated K's vagina.  (T. 165-169).

Sarah Adleta also stated that she had forwarded some of these images to Jonathan Adleta in 2012, via text messages or e-mail.

She further stated she and Jonathan Adleta had discussed via text messages, the sexual abuse of their daughter, K.  In a text dated January 24, 2013, Jonathan Adleta discussed when K and L would lose their virginity.  Jonathan Adleta wrote,

> "Maybe 12….haha don't know about her (K), ha when she gonna "sit" on me?:P."  Sarah Adleta responded, "Ha well if she is anything like how I am about sex I think it will be earlier then normal, ha whenever you see them again."  Jonathan Adleta replied, "I ment when is she gonna stick mine in her when I said "sit"…you like seeing me cum on her?" (T. 138-139)

> In a text message dated February 12, 2013, Jonathan Adleta wrote:

> "So what you want to see (K's first name) play?"  Sarah Adleta responded, "Your cock and my pussy haha."  Jonathan Adleta replied, "Oh so you want her to make my cock pay with your pussy?"  Jonathan Adleta later texted, "Her (K) with cum anywhere on her would be so hot."  "More than she does now?  You having someone cum on her."

5

Sarah Adleta responded, "No I was referring to her with you the last time remember she freaked out." Jonathan Adleta responded, "Yea she kinda did…maybe you should get someone to cum on her." Sarah Adleta replied, "what your thoughts of her playing with a small dildo now?" Jonathan Adleta replied, "that's fine, ha just take pics:p" (T. 143-149)

Sarah Adleta also testified that she and Jonathan had engaged in numerous live video and instant messaging sessions through Skype. Often times, these conversations included references to the sexual assault of K, which was confirmed by agents who testified. (T. 90, 98-100, 118-119, 121-129, 153-157).

Sarah Adleta also testified about Skype messages revealed the following conversation on March 5, 2013:

Sarah Adleta stated, "He (Dixon) wants me to do stuff with K." Jonathan Adleta replied, "on skype for him?" Sarah Adleta replied, "yes." Jonathan Adleta then stated "r u?" Sarah Adleta said "yea a little." Jonathan Adleta asked, "what have you done?" Sarah Adleta stated, "just given her oral I won't do anything more then that she practically begs for it only done it a few times but she loves it." Jonathan Adleta replied, "bet he loves it too." Sarah Adleta stated, "he says it is real hot." Jonathan Adleta asked, "so the question is, when are you gonna have her suck on a cock?" Sarah Adleta stated "I don't do anything unless she wants it. Hum well when it's the right guy and right time." Jonathan Adleta stated "oh." Sarah Adleta advised, "he is the only one I consider besides you." Jonathan Adleta stated, "I'd like to see that."

Later in the conversation, Sarah Adleta advised that she was considering taking K to meet Dixon in North Carolina. Jonathan Adleta stated, "well if you do, you got to record it." (T. 143-157).

On March 31, 2013, agents executed a federal search warrant at Adleta's home

6

in Glenpool, Oklahoma. During execution of the warrant, a computer forensic review of Adleta's Sony laptop computer revealed a picture of Adleta rubbing his erect penis on another child, who was four-years-old at the time. (T. 168-169). Agents subsequently interviewed M's mother who admitted to dating Adleta beginning in early 2012 and through the time period charged in the indictment. Samantha Bryant stated that Adleta was sexually interested in M, and persuaded M's mother to display M naked during their Skype communications. (T. 165-167). According to Bryant, in November 2012, Adleta persuaded her to sexually abuse M and take photographs of the abuse for Adleta's benefit. (T. 158-167). In addition, in early November, 2012, Adleta visited M's mother and M in Texas. During the visit, Adleta rubbed his penis against M and asked Bryant to photograph the sexual activity and send him the pictures. Bryant agreed and e-mailed these images to Adleta, on approximately November 19, 2012. Bryant also provided a statement that in December 2012, at Adleta's home in Oklahoma, just before K and L's visit, Adleta masturbated and ejaculated on M in the presence of Bryant. Adleta also made M kiss his penis. (157-158).

Pamela Bryant also testified that Appellant had sexual interest in children. (T. 183). Liked Father/Daughter fantasy stories. (T. 191-193). That he had photographs of naked children on his computer. (T. 198-199). Finally, that he liked to role play Father/Daughter sex. (T. 196).

7

On April 24, 2013, a federal grand jury in the Middle District of Florida, Orlando Division, returned a one-count Indictment naming Jonathan Daniel Adleta as defendant. (Doc. 17).

On August 28, 2013, a federal grand jury in the Middle District of Florida, Orlando Division, returned a two-count Superseding Indictment naming Jonathan Daniel Adleta as defendant. (Doc. 60).

Count One charges that from at least November 2012 through March 2013, In Orange and Seminole Counties, Florida, I the Middle District of Florida, and elsewhere, Jonathan Adleta did commit the offense of Conspiracy to Transport a Minor in Interstate Commerce, for Purposes of Sexual Activity, in violation of U.S.C. § 2423(e).

Count Two charges that on December 23, 2012, in Seminole and Orange Counties, Florida, in the Middle District of Florida, and elsewhere, Jonathan Adleta did commit the offense of Transportation of a Minor in Interstate Commerce, for Purposes of Sexual Activity, in violation of 18 U.S.C. § 2423(a) and 2.

The Superseding Indictment contains a forfeiture provision pursuant to 18 U.S.C. § 2253.

The Defendant entered a not guilty plea and proceeded to a jury trial before United States District Court Judge Roy B. Dalton, Jr. On September 12, 2013, the jury returned a verdict of guilty as to Counts One and Two of the Superseding

8

Indictment. (Doc. 89). United States District Court Judge Roy B. Dalton, Jr., adjudicated the defendant guilty and scheduled sentencing for January 6, 2014. (Doc. 90).

Prior to trial, on August 12, 2013, the Defendant filed a Motion in Limine to prohibit the Government from introducing collateral bad acts. (Doc 54). The Government filed a Response on August 20, 2013. (Doc 59). In said Response the Government indicated four (4) categories of evidence sought to be admitted under Rules 404(b), 413, and 414, Federal Rules of Evidence, to wit:

a) Other acts of child molestation;
b) Evidence of the receipt of child pornography;
c) Evidence of Appellant's diary entries; and
d) Text and Skype chat logs. (Doc 59).

The Court entered an Order on the Motion in Limine on September 13, 2013. (Doc 65). In said Order, the Court denied the Motion in Limine and allowed the Government to introduce the evidence, relying entirely on Rules 413 and 414, Federal Rules of Evidence. The Court denied Appellant's request for a 404(b) Instruction to the Jury at Charge Conference. (T. 77, P 5-7).

## SUMMARY OF THE ARGUMENT

The prohibition against admitting evidence of a bad act in order to argue propensity to commit crimes is deeply rooted in the common law and American Jurisprudence. Rules 413 and 414, Federal Rules of Evidence provide an exception to this fundamental principle to those accused of sex offenses.

This expansion and circumvention of the common law exceptions codified in Rule 404(b), Federal Rules of Evidence violates fundamental conceptions of justice, and as such, violate the Due Process Clause of the Fifth Amendment.

# ARGUMENT

The Fifth Amendment of the United States Constitution guarantees a Defendant the right to Due Process.

The Due Process Clause has operation beyond the specific guarantees enumerated in the Bill of Rights. See *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). The Due Process Clause will invalidate an evidentiary rule if the rule "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." *United Stated v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed. 2d 752 (1977) (citations and internal quotation marks omitted), *cited in Dowling*, 493 U.S. at 353, 110 S.Ct. at 674-75. The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling*, 493 U.S. at 352-53, 110 S.Ct. at 674.

The primary guide in determining whether the principle in question is fundamental is historical practice." *Montana v. Egelhoff*, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996).

The Supreme Court stated in *Egelhoff,* "It is not the [government] which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather [the defendant] who must show that the principle of procedure *violated* by the rule (and allegedly required by due process) is 'so rooted in the traditions and conscience of our people

11

as to be ranked as fundamental.'" **882** *Egelhoff,* 518 U.S. at 47, 116 S.Ct. at 2019 (quoting *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 2322-23, 53 L.Ed.2d 281 (1977)).

Until recently, the character-evidence prohibition has been a fixture of the American common law. (Fed. R. Evid. 413-415. For a brief history of the genesis of Rules 413-415, see Michael Teter, *Acts of Emotion: Analyzing Congressional Involvement in the Federal Rules of Evidence,* 58 Cath. U. L. Rev. 153, 177-87 (2008) (George E. Dix et al., McCormick on Evidence 4 §§ 186-95, Kenneth S. Broun ed., 2006). The prohibition forbids a litigant from employing character evidence as circumstantial proof of conduct – that is, in the past accused performed an illegal act that shows that he or she has a propensity for illegal conduct, and accordingly, that propensity increases the probability that he or she has performed the charged act. (1 Edward J. Imwinkelried, Uncharged Misconduct Evidence § 2:19, at 2-113, rev. ed. 2003 & Supp. 2009).

The common law banned the admission of evidence of previous misconduct because it posed two probative dangers. In order to decide whether to draw the initial inference, the trier of fact would have to focus on the accused's personal-or subjective-character. However, that focus creates the probative danger that the trier of fact will be tempted to decide the case on an improper basis, namely, the accused's status as a recidivist. (*Id.* § 2:19. The Eighth Amendment's prohibition of cruel and

12

unusual punishment precludes punishing an accused for his or her status. *Robinson v. California*, 370 U.S. 660, 666 (1962). In deciding whether to draw the inference from character to conduct on the charged occasion, there is also a danger that the trier of fact will attach undue weight to the evidence of the accused's prior illegal acts. (1 Imwinkelried, Uncharged Misconduct Evidence, *supra* note 5, § 2:19, at 2-116 to 2-119). Moreover, a large body of psychological research corroborates the common-law assumption that character is a poor predictor of conduct on a particular occasion. (*Id.* § 2:19).

Federal Rule of Evidence 404(b) codifies the common-law principle. Rule 404(b) reads:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. (Fed. R. Evid. 404(b)).

The first sentence of the statute embodies the ban on character reasoning; the second sentence, however, permits the prosecution to introduce testimony about an accused's uncharged misconduct when the evidence possesses genuine noncharacter relevance, the theory of relevance ordinarily moots the probative dangers that inspire the character-evidence prohibition. (1 Imwinkelried, Uncharged Misconduct

Evidence, *supra* note 5, § 2:22, at 2-127 to 2-128). Such theories do not require the jury to posit any assumption about the accused's bad character. (*Id.* § 2:22).

The introduction of evidence of an accused's other misdeeds is obviously prejudicial to the accused. Prosecutors appreciate the potential impact of such evidence at trial; consequently, they proffer the evidence with great frequency. Dean Charles T. McCormick famously remarked that the published opinions on this subject are as numerous "as the sands of the sea[s]." (Kenneth S. Broun et al., McCormack on Evidence § 190, at 550 n.8 (Edward W. Clearly ed., 3d ed. 1984)). Rule 404(b) has generated more reported decisions than any other provision of the Federal Rules. (2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 404[08], at 404-47). In many jurisdictions, the admissibility of uncharged misconduct evidence is not only the most frequently litigated issue on appeal, but also the most common ground for reversal. (22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 427 (1978) (footnote omitted); *see also* Stephen A. Saltsburg, *Trial and Tactics: Inextricably Intertwined? Maybe Not*, 16 Crim. Just. 60, 60 (2001); Jason M. Brauser, Comment, *Intrinsic or Extrinsic?: The Confusing Distinction between Inextricably Intertwinged Evidence and Other Crimes Evidence under Rule 404(b),* 88 Nw. U. L. Rev. 1582, 1583-84 (1984)).

In most Rule 404(b) battles, the decisive question is whether the prosecution can articulate a noncharacter theory of logical relevance that is tenable on the facts.

14

The ban on propensity evidence dates back to English cases of the seventeenth century. *See Hampden's Trial,* 9 How. St. Tr. 1053, 1103 (K.D. 1684). In addition, courts in the United States have enforced the ban throughout our nation's history, *see, e.g. Boyd v, United States,* 142 U.S. 450, 458, 12 S.Ct. 292, 295, 35 L.Ed. 1077 (1892). The ban's lineage and significance in our jurisprudence, it is a protection that the Due Process Clause guarantees. *United States v. Castillo,* 140 F.3d 874 (10th Cir. 1998).

At the outset, Appellant concedes that both the Eighth and Tenth Circuits, have held that Rules 413 and 414 do not violate the Due Process Clause. *United States v. Castillo,* 140 F.3d 874 (10th Cir. 1998), *United States v. Mound,* 149 F.3d 799, (8th Cir. 1998). Appellant contends that this Court should reject the holdings in <u>Castillo</u> and <u>Mound</u> as the prohibition against propensity evidence is deeply rooted in the common law and thus, its holding is contrary to the law established by the United States Supreme Court. See <u>Lovasco</u>; <u>Huddleston</u>.

The <u>Castillo</u> Court found that historical record regarding evidence of one's sexual character is much more ambiguous. Stating that a century ago, courts regularly admitted a defendant's prior acts as proof of the crime of incest.

The Court further stated in the nineteenth and early twentieth centuries, some states developed a "lustful disposition" rule, allowing evidence of sexual acts other than the one charged in order to prove the defendant's disposition to commit a sex

crime. "Many of the cases in this area of the law concern sexual offenses against children. By the early 1920's, twenty-three states had a "lustful disposition" exception of applicable to cases of statutory rape. *See* Reed, 21 AM. J.CRIM. L. at 171. Today, an even greater number of states retain the "lustful disposition" rule in cases involving sex offenses, including cases of child molestation. *Id.* at 188."

The <u>Castillo</u> court found it is significant that other rules of evidence have been found constitutional even though they allow evidence presenting a risk of prejudice similar to that presented by Rule 413 and Rule 414 evidence. However, when a court admits evidence of a defendant's propensities, such as evidence of the defendant's prior criminal acts, it creates "'the risk that a jury will convict for crimes other than those charged- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" *Old Chief v. United States,* 519 U.S. 172, –, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (quoting *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir. 1982)). Those risks of prejudice are present not only when the evidence is offered to show propensity, but whenever a defendant's prior bad acts are admitted. Whenever such evidence is before the jury, the jury may be tempted to convict for the prior bad act, or what it says about the defendant's character, rather than what it says about the likelihood that the defendant committed the charged crime. Therefore, the Supreme Court has described the risk of prejudice associated with evidence admitted under Rule 404(b) – which allows evidence of prior bad acts – in almost

16

precisely the same terms as that associated with propensity evidence. Rule 404(b) evidence presents the risk that "the jury may choose to punish the defendant for the similar rather than the charged act, or [that] the jury may infer that the defendant is an evil person inclined to violate the law." *Huddleston v. United States,* 485 U.S. 681, 686, 108 S.Ct. 1496, 1499-1500, 99 L.Ed.2d 771 (1988); *id.* at 691, 108 S.Ct. at 1502 (citing *Michelson v. United States,* 335 U.S. 469, 475-76, 69 S.Ct. 213, 218-19, 93 L.Ed. 168 (1948)). The Castillo court found that since the Court upheld the common law equivalent of Rule 404(b), see *Lisenba v. California,* 314 U.S. 219, 227-28, 62 S.Ct. 280, 285-86, 86 L.Ed. 166 (1941), "there has been no doubt that it is a constitutional rule."

Appellant asserts that it is precisely the limited purposes for admissibility listed in Rule 404(b) which makes it constitutional. It prohibits the Government from arguing that a jury should convict a Defendant because of his propensity to commit crimes.

The Castillo court found that the most significant factor favoring Rule 414's constitutionality is the existence of procedural protections in Rule 402 and, in particular, Rule 403. However, those same rules apply to Rule 404(b). The Castillo court relied on Huddleston, but Huddleston turned on Rule 404(b). The Castillo court stated that although *Huddleston* was not a constitutional decision, it is important to our inquiry because the defendant here – like those in *Huddleston*- argues that "prior

17

acts" evidence creates an unacceptable risk of prejudice. The *Huddleston* Court ruled that even when evidence has a potentially great prejudicial effect, as Rule 404(b) evidence does, Rules 402 and 403 adequately control the prejudicial effect. *See Huddleston,* 485 U.S. at 691, 108 S.Ct. at 1502.

In United States v. Mound, the Eighth Circuit determined that Rule 413 does not violate due process.

Mound allegedly abused his daughter T.M. physically and sexually from 1993, when she was ten, through January 1997. The alleged abuse included forced touching and intercourse and beating with an axe handle.

Mound argued that Federal Rule of Evidence 413 was unconstitutional. Rule 413 provides in relevant part:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing of any matter to which it is relevant.

In considering evidence under Rules 413 and 414, a trial court must still apply Rule 403, though in such a way as "to allow [the new rules their] intended effect." *United States v. LeCompte,* 131 F.3d 767, 769 (8th Cir. 1997). See also *United States v. Sumner,* 119 F.3d 658, 661 (8th Cir. 1997). The question was thus whether Rule 413, subject to the constraints of Rule 403, is constitutional.

The Eighth Circuit held that Rule 413 does not violate the Due Process Clause. To determine whether the rule fails "the due process test of fundamental fairness,"

18

we consider whether "the introduction of this type of evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (citation omitted). Mound argued that it does, because it authorized the jury to overvalue character evidence, to punish a defendant for past acts and to convict the defendant for who he is, rather than for what he has done.   The Eighth Circuit held that Rule 413 was constitutional.   However, Appellant submits that arguing propensity flies in the face of fundamental conceptions of justice.

Appellant asserts that this Court should reject the Eighth and Tenth Circuits finding that Rules 413 and 414 are Constitutional.   The prohibition against propensity evidence is deeply rooted in the common law and this country's jurisprudence.   To allow the Government to obtain a conviction against a Defendant by arguing he is a bad person is so extremely unfair that its admission violates fundamental conceptions of Justice.

## **CONCLUSION**

The prohibition against propensity evidence is deeply rooted in the common law and this country's jurisprudence. To allow the Government to obtain a conviction against a Defendant by arguing he is a bad person is so extremely unfair that its admission violates fundamental conceptions of Justice.

As such, the Appellant's conviction should be vacated, the case remanded for new trial, and any collateral bad act evidence should be confined to the admissibility requirements of Rule 404(b), Federal Rules of Evidence.

Respectfully submitted,

/s/ Christopher L. Smith, Esquire
Christopher L. Smith, Esquire
Florida Bar No. 367461
605 E. Robinson Street, Suite 250
Orlando, Florida 32801
Telephone: (407) 897-6888
Facsimile: (407) 841-3817
E-Mail: chrislegalcounsel@yahoo.com
Counsel for Appellant

20

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, in compliance with 11th Cir. R. 31-5(c), and

Adobe Acrobat PDF file of the foregoing brief was uploaded via the Internet to the

Court's website on this 18th day of August, 2014.

/s/ Christopher L. Smith, Esquire
Christopher L. Smith, Esquire
Florida Bar No. 367461
605 E. Robinson Street, Suite 250
Orlando, Florida 32801
Telephone: (407) 897-6888
Facsimile: (407) 841-3817
E-Mail: chrislegalcounsel@yahoo.com
Counsel for Appellant

21