No. 14-10228-FF

# In the
# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JONATHAN ADLETA,

*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:13-CR-94-ORL-37GJK

## BRIEF OF THE UNITED STATES

A. LEE BENTLEY, III
United States Attorney

CHERIE L. KRIGSMAN
Assistant United States Attorney
Appellate Division

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division
Florida Bar No. 438741
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

October 10, 2014

*United States v. Jonathan Adleta*
No. 14-10228-FF

**Certificate of Interested Persons
and Corporate Disclosure Statement**

In addition to the persons identified in the Certificate of Interested

Persons and Corporate Disclosure Statement in Jonathan Adleta's principal

brief, the following persons have an interest in the outcome of this case:

1.    Bentley, A. Lee, III, United States Attorney;

2.    Krigsman, Cherie L., Assistant United States Attorney; and

3.    Minor victims whose identities are protected.

## Statement Regarding Oral Argument

The United States does not request oral argument. The facts and legal arguments are adequately presented in the briefs and record, which are uncomplicated. This appeal concerns a single issue, on plain-error review. The decisional process will not be significantly aided by oral argument. *See* 11th Cir. R. 34-3(b)(3).

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Statement Regarding Oral Argument ..............................................................i

Table of Contents ..........................................................................................ii

Table of Citations .........................................................................................iii

Statement of Jurisdiction ............................................................................. vi

Statement of the Issue................................................................................... 1

Statement of the Case ................................................................................... 1

    *Course of Proceedings*...................................................................2

    *Statement of the Facts*...................................................................2

    *Standard of Review* .......................................................................9

Summary of the Argument .......................................................................... 10

Argument and Citations of Authority ......................................................... 11

    The district court did not commit plain error by not ruling, *sua sponte*, that Federal Rules of Evidence 413 and 414 are unconstitutional, given that neither this Court nor the Supreme Court has held—or even suggested—that they are.............................. 11

Conclusion................................................................................................... 21

Certificate of Service

# Table of Citations

## Cases

*Huddleston v. United States*,
　485 U.S. 681, 108 S. Ct. 1496 (1988) ........................................................ 14

*United States v. Adleta*,
　No. 13-15052, 2014 WL 3882497 (11th Cir. Aug. 8, 2014) .......................... 9

\**United States v. Aguillard*,
　217 F.3d 1319 (11th Cir. 2000) ........................................................... 12, 14

*United States v. Baker*,
　432 F.3d 1189 (11th Cir. 2005) .................................................................. 17

*United States v. Carino*,
　368 F. App'x 929 (11th Cir. 2010) .............................................................. 13

\**United States v. Castillo*,
　140 F.3d 874 (10th Cir. 1998) ..................................................................... 14

*United States v. Cooper*,
　433 F. App'x 875 (11th Cir. 2011) .............................................................. 13

*United States v. Foster*,
　889 F.2d 1049 (11th Cir. 1989) .................................................................. 18

*United States v. Gianni*,
　678 F.2d 956 (11th Cir. 1982) ..................................................................... 16

*United States v. Jiminez*,
　564 F.3d 1280 (11th Cir. 2009) .................................................................. 19

*United States v. Lejarde-Rada*,
　319 F.3d 1288 (11th Cir. 2003) .................................................................. 12

iii

*United States v. Lemay,
   260 F.3d 1018 (9th Cir. 2001) .................................................................... 14

United States v. Levinson,
   504 F. App'x 824 (11th Cir.), *cert. denied*, 134 S. Ct. 129 (2013) ................ 13

United States v. Lovasco,
   431 U.S. 783, 97 S. Ct. 2044 (1977) ........................................................... 14

United States v. Magluta,
   198 F.3d 1265 (11th Cir.1999) ................................................................... 13

United States v. McGarity,
   669 F.3d 1218 (11th Cir.), *cert. denied* , 133 S. Ct. 551 (2012) ..................... 13

United States v. McLean,
   138 F.3d 1398 (11th Cir. 1998) ................................................................... 18

United States v. Mooney,
   303 F. App'x 737 (11th Cir. 2008) .............................................................. 18

United States v. Moriarty,
   429 F.3d 1012 (11th Cir. 2005) ................................................................... 14

*United States v. Mound,
   149 F.3d 799 (8th Cir. 1998) ...................................................................... 14

United States v. Munoz,
   430 F.3d 1357 (11th Cir. 2005) ................................................................... 12

United States v. Rodriguez,
   398 F.3d 1291 (11th Cir. 2005) ................................................................... 15

United States v. Rodriguez,
   627 F.3d 1372 (11th Cir. 2010) ................................................................... 15

United States v. Rojas,
   145 F. App'x 647 (11th Cir. 2005) .............................................................. 18

iv

*United States v. Smith*,
  459 F.3d 1276 (11th Cir. 2006) ............................................................ 9, 12

\*United States v. Stokes,
  726 F.3d 880 (7th Cir.), *cert. denied*, 134 S. Ct. 713 (2013) ......................... 14

*United States v. Woods*,
  684 F.3d 1045 (11th Cir. 2012) .............................................................. 13

## Statutes

18 U.S.C. § 2 .................................................................................... 2

18 U.S.C. § 2423(a) ............................................................................ 2

18 U.S.C. § 3231 .............................................................................. vi

28 U.S.C. § 1291 .............................................................................. vi

## Rules

Fed. R. App. P. 4(b) .......................................................................... vi

Fed. R. Evid. 404(b) ........................................................................13, 18

Fed. R. Evid. 413 ........................................................................ *passim*

Fed. R. Evid. 413(a) .......................................................................... 11

Fed. R. Evid. 414 ........................................................................ *passim*

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered judgment against Jonathan Adleta on January 10, 2014, Doc. 103, and Adleta timely filed a notice of appeal on January 16, 2014, Doc. 104. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issue

Did the district court plainly err in not ruling, *sua sponte*, that Federal Rules of Evidence 413 and 414 are unconstitutional, notwithstanding that neither this Court nor the Supreme Court has even suggested that they are unconstitutional?

## Statement of the Case

This case concerns Jonathan Adleta's sexual abuse of his three-year-old daughter, who is referred to here as "K." Adleta was charged with and convicted of offenses related to the interstate transportation of his daughter for criminal sexual purposes. The evidence at trial established that he had convinced his ex-wife to bring their daughter from Florida to Oklahoma so that he could abuse her. During that same timeframe, he also had convinced his then-girlfriend to let him do the same thing to her young daughter.

On appeal, Adleta argues only one thing: that the district court erred in admitting evidence of uncharged sexual abuse because, he says, Federal Rules of Evidence 413 and 414 are unconstitutional. But this newly raised argument is subject to plain-error review, and neither this Court nor the Supreme Court, nor any other circuit, has even suggested that these rules are unconstitutional.

1

## *Course of Proceedings*

In April 2013, Jonathan Adleta was indicted in the Middle District of Florida on charges of having conspired to transport a minor in interstate commerce for the purpose of engaging in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and of having transported that minor for that purpose, in violation of 18 U.S.C. §§2423(a) and 2. Doc. 60. He went to trial, and the jury found him guilty of both crimes. Doc. 89. The district court sentenced him to serve concurrent terms of life imprisonment. Doc. 103. This appeal followed. Doc. 104.

## *Statement of the Facts*

In 2008, Jonathan Adleta began dating Sarah Lippy. Doc. 112 at 79–80; *see* Gov't Ex. 24. By 2010, they had a one-year-old daughter, K, and Sarah was pregnant with their son. Doc. 112 at 82–84. Adleta, who was by then deployed overseas with the military, explained to Sarah via satellite phone that he would marry her only if she would agree to an open, sexual lifestyle with their children; he wanted to be able to take nude photos of their daughter, he wanted to have sex with their daughter, including receiving oral sex from her and ejaculating on her, and he wanted Sarah eventually to have sex with their son. Doc. 112 at 82–86.

2

Adleta kept a diary, in which he recounted at length his conversations with Sarah on the topic. Gov't Ex. 1a. (His diary was later found in his attic. Doc. 112 at 226.) He set out his plans to live a sexual, nudist lifestyle around the children, to educate them about sex, and to engage in sex with them, including "[K] giving me a hand job or blow job and … maybe even have sex with her." Gov't Ex. 1a. He wrote that Sarah "knows exactly where I stand and she seems to be fine with really wanting to marry me." *Id*.

Sarah struggled with Adleta's demands but eventually acceded to them, hoping that he might grow disinterested in the notion of having sex with the children. Doc. 112 at 85–86. They got married in June 2010, while Adleta was stationed overseas. Doc. 112 at 82–84.

But the waning interest that Sarah had hoped for did not take place. *See* Gov't Ex. 1a. Instead, Adleta had Sarah download child pornography from a child-pornography website he had joined, and he had her send it to him overseas in care packages. Doc. 112 at 86–87.

In late 2010, Adleta returned to the United States and to his family. Doc. 112 at 88. As his prenuptial demands had presaged, he often was naked around the children, he took showers with them, and he frequently masturbated in front of them. *Id*. K, still just a toddler, sometimes held his erect penis. *Id*.

3

The following year, Adleta divorced Sarah. Doc. 112 at 91. He lived in Oklahoma, while she and the children lived in Florida, but they remained in contact, and Adleta continued to talk to Sarah about his sexual interest in K. Doc. 112 at 91, 98, 102.

Sarah, meanwhile, had fallen under the spell of another man, Aaron Dixon, who shared Adleta's predilections. Doc. 112 at 99. Sarah told Adleta that Dixon, who lived out-of-state, had shown her child pornography via Skype (a video-chat service). Doc. 112 at 126–29; Gov't Ex. 2 (transcript of Skype conversation). Adleta wished that he could have seen it. Gov't Ex. 2. Sarah also told Adleta that she had engaged in sexual activity with K at Dixon's request; she had shared that activity with Dixon via Skype and photos. Doc. 112 at 99. Adleta, who was intrigued by what Sarah had done to K, had Sarah send him the photos. Doc. 112 at 99–100, 120.

By then, Adleta too had moved on, but like Sarah, he had not moved very far. His new girlfriend, Samantha Bryant, had a very young daughter herself. Doc. 112 at 178–79. Adleta told Bryant about his sexual interest in young girls and his "daddy-daughter fantasy." Doc. 112 at 183. Bryant—like Sarah—indulged him. For instance, when Adleta Skyped with Bryant (who was living in Texas), he had Bryant show him her four-year-old daughter, naked, while he masturbated. Doc. 112 at 184.

4

But that wasn't enough for Adleta: he told Bryant that he wanted to masturbate on little girls and to have oral sex with them. Doc. 112 at 185. And, in the fall of 2012, he traveled to Bryant's Texas home, where he put his penis on Bryant's daughter, whose panties had been pulled down, and masturbated. Doc. 112 at 186. He had Bryant take photos of that molestation with a camera he had given her. Doc. 112 at 186–87. (Bryant later emailed those photos to Adleta. Doc. 112 at 187–89; *see* Gov't Exs. 16 and 17 (two of those photos).) Adleta also asked Bryant to perform sex acts on her daughter. Doc. 112 at 189. Bryant complied and sent him photos of those acts. Doc. 112 at 189–90.

Adleta told Bryant that he wanted to sexually educate his own daughter K too. Doc. 112 at 190. He convinced Bryant to write sex stories about both K and her daughter, and in November 2012 she sent him the stories she had written about the two girls. Gov't Ex. 18; Doc. 112 at 191–93.

Meanwhile, Adleta continued his conversations with Sarah about child pornography and his sexual curiosity about K. Doc. 112 at 99–103. He told Sarah that he wanted to have K perform oral sex on him, he wanted to ejaculate on K, and he wanted to video-record the sexual activity. *Id.* And, to make that happen, he convinced Sarah to bring the children to visit him in Oklahoma over the Christmas 2012 holidays. Doc. 112 at 100. Adleta

gave her his credit-card information so she could buy the airline tickets. Doc. 112 at 101–02.

By December 2012, Bryant and her children (she also had a young son) had moved to Oklahoma to live with Adleta. Doc. 112 at 194. Almost immediately, Adleta masturbated over and ejaculated on Bryant's daughter, rubbing his penis on her vagina. Doc. 112 at 196. He had Bryant record the abuse on her cellphone. Doc. 112 at 196. Then, in the remaining days before Sarah and her children arrived for the Christmas holidays, Adleta had Bryant role-play as his little daughter during their sexual activity. Doc. 112 at 197.

Just before Christmas, Sarah and the children flew in from Florida and arrived at Adleta's house in Oklahoma. Doc. 112 at 106–08. Before long, Adleta called Sarah into his bedroom, where he was masturbating—and then ejaculating—on K's bare chest. Doc. 112 at 106. K, not yet four years old, was distraught. Doc. 112 at 78, 107.

During that visit, Adleta also had sex with Bryant while K was in their bed, and he masturbated as he watched the children playing. Doc. 112 at 107–12, 198. He told both Sarah and Bryant that he had taken a shower with K and that K had had her mouth on his penis. Doc. 112 at 112–13, 199. He told Bryant that he had ejaculated on K's face. Doc. 112 at 198–99.

In January, Sarah and the children returned to Florida, but Sarah continued to talk to Adleta daily. Doc. 112 at 117, 199. They often communicated via Skype, with Adleta sometimes masturbating in front of K during those chats. Doc. 112 at 118–19.

In their conversations, they talked about the recent trip to Oklahoma. Doc. 112 at 115. Adleta asked Sarah if she had liked seeing him "cum on" K during that visit, and he told Sarah that he wanted to have lots of pictures taken of K. Doc. 112 at 139–41; Gov't Ex. 3 (text message). Sarah mentioned that Dixon had wanted videos of K engaging in sexual activity with Adleta. Doc. 112 at 116. And Sarah told Adleta that she had engaged in sexual activity with the children so that she could share that activity with Dixon via Skype and photos. Doc. 112 at 99. Adleta was intrigued by what Sarah had done for Dixon, and Adleta had Sarah send him photos of the sex acts she had committed on K for Dixon's pleasure. Doc. 112 at 99–100, 120.

Adleta mused about when K would lose her virginity, and he asked Sarah when she thought K would "stick mine in her." Doc. 112 at 138–40; Gov't Ex. 3. Adleta and Sarah continued to talk about having K engage in sexual activity with the two of them. Gov't Ex. 4 (text message). Adleta reminded Sarah that K had "freaked out" when he had ejaculated on K, so he thought that maybe Sarah could relax K by having someone else do that to K.

7

Doc. 112 at 117–18, 144–47; Gov't Ex. 4. For her part, Sarah asked Adleta what he thought about her getting a small dildo for K, and he responded, "That's fine, ha just take pics." Gov't Ex. 4 at 2. He reiterated that he really wanted Sarah to find others to engage in sexual activity with K. Doc. 112 at 148–49.

In February 2013, Sarah asked Adleta about his relationship with Bryant, but he expressed pessimism because he was "still into young and dad-daughter stuff." Doc. 112 at 153–54; Gov't Ex. 5 at 1 (text message). He wanted Sarah to give him details about what Dixon had been doing with Dixon's own young daughter. Doc. 112 at 157–58; Gov't Ex. 5. He also told her that he had been ready to have Bryant's young son perform oral sex on him on camera, but Bryant had shown up before he could do it. Doc. 112 at 157–58; Gov't Ex. 5.

Adleta reiterated his interest in child pornography, and Sarah sent him a link to a child-pornography site that Dixon had given to her. Doc. 112 at159–61; gov't Ex. 6 (Skype conversation). She and Adleta discussed that she had performed oral sex on K and transmitted it to Dixon via Skype. *Id.* at 162. Adleta was sure that Dixon had loved it, but also wanted to know when Sarah was "going to have [K] suck on a cock." *Id.* Adleta wanted her to video-record it if it happened and to share it with him. *Id.* at 163. (Sarah did send to Adleta

8

a photo of her toddler son inserting a dildo into her vagina, which she had done at Dixon's request. *Id.* at 164–66.)

Through all of these conversations, Adleta was trying to get Sarah to agree to allow the children to visit him again, and for longer periods of time. Doc. 112 at 114–15, 120–21, 133–35; Gov't Exs. 26, 27. But in March 2013, before any more visits took place, Adleta was arrested, as were Sarah and Bryant. Doc. 112 at 200, 220. Sarah is now serving a lengthy prison term, which this Court recently upheld. Doc. 112 at 76; *see United States v. Adleta*, No. 13-15052, 2014 WL 3882497 (11th Cir. Aug. 8, 2014). Bryant also is serving a prison term for her crimes. Doc. 112 at 177–78, 184.

### *Standard of Review*

Jonathan Adleta is challenging the constitutionality of Federal Rules of Evidence 413 and 414. But he did not challenge their constitutionality in the district court, so this Court should review the issue only for plain error warranting relief. *See United States v. Smith*, 459 F.3d 1276, 1282–83 (11th Cir. 2006). Therefore, he can obtain relief only if he establishes (1) error, (2) that is plain, and (3) that affects his substantial rights. *Id.* Even if he establishes all three conditions, this Court may exercise its discretion to correct the forfeited error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

9

### *Summary of the Argument*

The district court did not commit plain error by not invalidating Federal Rules of Evidence 413 and 414, *sua sponte*, on the ground that they are unconstitutional. Neither this Court nor the Supreme Court has even suggested that these rules are unconstitutional. Furthermore, this Court has upheld the admission of evidence under these rules several times, and the Courts of Appeals that have decided the issue have uniformly upheld the rules as constitutional. There was no error here, plain or otherwise.

Even if there had been plain error, Adleta has not demonstrated prejudice to his substantial rights. Most, if not all, of the evidence admitted under Rules 413 and 414 was admissible anyway, even without resort to those rules. And even without the challenged evidence, the evidence against Adleta was overwhelming.

Finally, this Court should not exercise its discretion to correct any error because the error would not seriously affect the fairness, integrity, or public reputation of this judicial proceeding. The admission of this evidence, particularly in light of the other evidence against Adleta, did not render the trial unfair. This Court's discretionary intervention is unwarranted.

10

## Argument and Citations of Authority

**The district court did not commit plain error by not ruling, *sua sponte*, that Federal Rules of Evidence 413 and 414 are unconstitutional, given that neither this Court nor the Supreme Court has held—or even suggested—that they are.**

Jonathan Adleta was charged with two offenses related to his transportation of his daughter, K, from Florida to Oklahoma so that he could sexually abuse her. Doc. 60. At trial, the district court admitted some evidence of other incidents involving Adleta's receipt of child pornography and molestation of children. He argues now that Federal Rules of Evidence 413 and 414—which allow evidence of uncharged sexual-assault and child-molestation crimes in sexual-assault and child-molestation cases—violate the Due Process Clause of the Fifth Amendment. Adleta's brief at 10–20.[1] But he did not challenge the rules' constitutionality in the district court. Although he did move *in limine* to preclude that evidence, as he mentions in his brief, he asserted only other, nonconstitutional grounds for exclusion. Docs. 54, 54-1 (arguing that this case is not a "sexual assault" or "child molestation" case

---

[1]Rule 413 provides, "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Rule 414 does likewise for evidence of other child-molestation offenses in child-molestation cases. Fed. R. Evid. 414(a).

11

under those rules and that the evidence's probative value is substantially outweighed by its unfair prejudice). In his motion for new trial, Adleta once again did not challenge the rules' constitutionality. Doc. 92.

Because Adleta did not challenge the constitutionality of Rules 413 and 414 below, this Court should review his claim—that the district court should have invalidated two rules of evidence *sua sponte*—only for plain error warranting relief. *See United States v. Munoz,* 430 F.3d 1357, 1373–75 (11th Cir. 2005) (constitutional challenge to sentence was subject to plain-error review because defendant had challenged sentence only on nonconstitutional grounds in district court). Adleta therefore can obtain relief only if he establishes (1) error, (2) that is plain, and (3) that affects his substantial rights. *See United States v. Smith*, 459 F.3d 1276, 1282–83 (11th Cir. 2006). Even then, this Court should decline to correct the error unless the error (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* Adleta has satisfied none of these requirements.

For an error to be plain under the plain-error rule, it must be "clear under current law." *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000). The appellant must identify controlling precedent from the Supreme Court or the Eleventh Circuit establishing that an error occurred. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003); *see also United States v.*

12

*Magluta*, 198 F.3d 1265, 1280 (11th Cir.1999) ("a district court's error is not

'plain' or 'obvious' if there is no precedent directly resolving an issue").

Adleta has not attempted to satisfy this plain-error standard, and he can't

in any event, because neither this Court nor the Supreme Court has

held—or even suggested—that Rule 413 or Rule 414 is unconstitutional.

Indeed, this Court has repeatedly upheld the admission of other-acts evidence

under the challenged rules. *See United States v. Woods*, 684 F.3d 1045, 1065

(11th Cir. 2012) (molestation evidence properly admitted under Rules 414 and

403); *United States v. McGarity*, 669 F.3d 1218, 1243–44 (11th Cir.) (defendant's

confession to uncharged molestations properly admitted under Rule 414(a)),

*cert. denied*, 133 S. Ct. 551 (2012); *United States v. Levinson*, 504 F. App'x 824,

828 (11th Cir.) ("The evidence of Levinson's 1998 conviction and alleged

sexual abuse of his daughter was admissible under both Rule 404(b) and Rule

414."), *cert. denied*, 134 S. Ct. 129 (2013); *United States v. Carino*, 368 F. App'x

929, 929–30 (11th Cir. 2010) (upholding district court's admission of

molestation evidence under Rule 414).[2] There was no error, plain or otherwise,

here.

---

[2]In *United States v. Cooper*, 433 F. App'x 875, 877 (11th Cir. 2011), this
Court declined to address the constitutionality issue because the challenged
evidence was also admissible under Rule 404(b). In *United States v. Woods*, 684
F.3d at 1064 n.23, this Court declined to address the issue because the
appellant had not adequately briefed it.

This Court has explained, similarly, that an asserted error cannot be plain "[w]hen neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). On the issue of Rules 413 and 414's constitutionality, the other circuits aren't even split: every one that has addressed the rules' validity under the Due Process Clause has held—correctly—that the rules are constitutional. *See United States v. Stokes*, 726 F.3d 880, 896–97 (7th Cir.), *cert. denied*, 134 S. Ct. 713 (2013); *United States v. Lemay*, 260 F.3d 1018, 1024–1027 (9th Cir. 2001); *United States v. Mound*, 149 F.3d 799, 800–01 (8th Cir. 1998); *United States v. Castillo*, 140 F.3d 874, 879–83 (10th Cir. 1998).[3] For this reason too, the district court did not commit plain error. *See Aguillard*, 217 F.3d at 1321 (where "the six circuits that have addressed it have all resolved the issue the same way the district court did, … [i]t follows that the district court did not commit plain error in doing so").

---

[3]Adleta states that *Castillo* and *Mound* are contrary to *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044 (1977), and *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496 (1988). Adleta's brief at 15. He is incorrect. *Lovasco* addressed whether a delay in indicting the defendant had violated his right to due process (it hadn't), and *Huddleston* addressed whether the district court has to find that a similar act occurred before admitting evidence of it under Rule 404(b) (it doesn't). Neither opinion suggests error here, let alone plain error.

14

But even if there had been error, and even if the error had been plain, Adleta still would not deserve relief. A defendant under plain-error review bears the burden of showing a reasonable probability of a different result but for the error. *United States v. Rodriguez*, 627 F.3d 1372, 1379, 1382 (11th Cir. 2010). If this Court cannot tell whether an unobjected-to error prejudiced a defendant, the defendant loses. *United States v. Rodriguez*, 398 F.3d 1291, 1299–1300 (11th Cir. 2005). Here, Adleta has not argued that the guilty verdicts likely would have been different absent the now-challenged evidence. In fact, his *Argument* does not identify what other inculpatory evidence was admitted against him at trial or even what evidence he thinks the district court should have excluded. He has not carried his burden of showing prejudice.

In any event, Adleta could not demonstrate prejudice both because the evidence admitted under Rules 413 and 414 was admissible even without resort to those two rules and because the evidence against him was overwhelming even without the challenged evidence.

In his *Statement of the Case and Facts*, Adleta identifies this evidence that the district court supposedly admitted under Rules 413 and 414:

- evidence that, in 2011, he had convinced Sarah to send child pornography to him;

15

- evidence that, in 2011, he had told Sarah of his interest in engaging in sexual activity with K and in eventually watching Sarah have sex with their not-yet-born son;

- evidence that, in 2012, Sarah had sent him images of her sexual activity with K;

- evidence that, in 2013, he and Sarah had discussed how he had sexually abused K in Oklahoma, as well as their plans for future sexual activity with K;

- evidence that, in 2013, he and Sarah had discussed Sarah's sexual activity with K and Sarah's possible future sexual activity with K and Dixon; and

- evidence of his sexual activity with Bryant's daughter and discussions with Bryant about his sexual interest in children, including K.

Adleta's brief at 4–7.

Most, if not all, of this evidence was admissible even in the absence of Rules 413 and 414. For example, all of Adleta's discussions with Sarah about his sexual interest in children and in K in particular, including his discussions with Sarah before the Oklahoma trip about his plan to engage in sexual activity with K and his admissions afterward that he had done so, were evidence of the charged crimes themselves. Most of these discussions were direct evidence of his agreement with Sarah to transport K to Oklahoma so that he could sexually abuse K. *Cf. United States v. Gianni*, 678 F.2d 956, 959 (11th Cir. 1982) ("There is rarely any direct evidence of an agreement to join a criminal conspiracy, so

16

that a defendant's assent can be inferred from acts furthering the conspiracy's purpose."). This evidence was intrinsic to the charged crimes.

The remainder of the challenged evidence, including the evidence of Adleta's abuse of Bryant's daughter, was—at a minimum—inextricably intertwined with the charged crimes and thus intrinsic to the charged offenses. *See United States v. Baker*, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (evidence of criminal activity other than charged offense is not "extrinsic" under Rule 404(b), and thus falls outside scope of that rule, when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense"). Adleta's abuse of Bryant's daughter occurred in the same house, in the same manner, and at about the same time, and it set the stage for K's impending arrival there and Adleta's abuse of K as well. This evidence included Adleta's discussions with Bryant about his sexual interest in K, who was about to be transported to their home in Oklahoma in furtherance of the charged conspiracy, and it encompassed his discussions, with both Sarah and Bryant, in which he compared his sexual interest in K with his sexual interest in Bryant's daughter. And it included Adleta's getting Sarah to send child pornography to him in anticipation of his sexual abuse of K. This evidence was

17

not extrinsic: "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *see also United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989) (evidence is inextricably intertwined with evidence regarding charged offense if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted").

But even if some of this evidence weren't intrinsic, it still would have been admissible as evidence of Adleta's motive or intent. *See* Fed. R. Evid. 404(b); *United States v. Mooney*, 303 F. App'x 737, 742–43 (11th Cir. 2008) (chat sessions and child-pornography photos on defendant's computer were admissible under Rule 404(b) as evidence of his intent to sexually abuse child); *United States v. Rojas*, 145 F. App'x 647, 650 (11th Cir. 2005) (defendant's chats with another minor girl were admissible under Rule 404(b) as evidence of intent). This evidence showcased Adleta's sexual interest in children, in daddy-daughter sex, and in K in particular, including what he intended to do to K in

18

Oklahoma (and it included, afterward, his admissions of what he had done to
K there).

Even if some of this evidence were not otherwise admissible (or even if
some of it might have called for a Rule 404(b) limiting instruction), the
remaining evidence of Adleta's guilt was overwhelming, so Adleta cannot
establish prejudice for this reason as well. As recounted in the *Statement of Facts*
above, Adleta's own words, in his text and Skype communications with Sarah
and in his diary, proved that he had conspired with Sarah to transport K to
Oklahoma so that he could sexually abuse her and that he had, in fact, abused
her while she was there. In light of that evidence, along with the substantial
other evidence admissible without recourse to Rules 413 and 414 (including
the testimony of Sarah and Bryant about what Adleta had done to K), he has
not shown, and cannot show, that any error prejudiced his substantial rights.
*See United States v. Jiminez*, 564 F.3d 1280, 1289 (11th Cir. 2009) (alleged plain
error in admitting evidence did not affect the defendant's substantial rights,
given that "[t]his is not a close case where [the challenged statement] tipped
the balance of evidence in favor of conviction").

Finally, even if there were error, and even if the error were plain, and
even if the error were prejudicial, this Court should not exercise its discretion
to correct the error because it would not seriously affect the fairness, integrity,

or public reputation of this judicial proceeding. As mentioned above, all of the circuits to have addressed the issue have concluded that the admission of evidence under Rules 413 and 414 does not deny a defendant a fair trial. Furthermore, the district court here conducted a Rule 403 balancing test before admitting this evidence, Doc. 65, and Adleta has not suggested on appeal that the challenged evidence—which pales in comparison to the direct evidence of the charged offenses themselves—failed that test. This Court's discretionary intervention is unwarranted.

For all of these reasons, this Court should affirm Adleta's convictions.

## Conclusion

The United States requests that this Court affirm the judgment of the district court.

Respectfully submitted,

A. LEE BENTLEY, III
United States Attorney

CHERIE L. KRIGSMAN
Assistant United States Attorney
Appellate Division

By:    *s/ David P. Rhodes*
DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division
Florida Bar No. 438741
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
david.rhodes@usdoj.gov

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was sent by CM/ECF on October 10, 2014, to:

CHRISTOPHER L. SMITH
*Counsel for Jonathan Adleta*

*s/ David P. Rhodes*
DAVID P. RHODES
Assistant United States Attorney

gkpr/no/10/09/14